**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **J.R.-1, J.R.-2, A.R., and C.R.**

**No. 21-0828** (Kanawha County 20-JA-329, 20-JA-330, 20-JA-331, and 20-JA-332)

## MEMORANDUM DECISION

Petitioner Father P.R., by counsel Carl J. Dascoli, appeals the Circuit Court of Kanawha County's September 24, 2021, order terminating his parental rights to J.R.-1, J.R.-2, A.R., and C.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Jake Wegman, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner and the mother in June of 2020. The DHHR alleged that it received a request from the Kanawha County Family Court for Child Protective Services ("CPS") to remove the children from the parents' custody after the parents failed to comply with a safety plan. A CPS worker investigated the allegations and observed that the children were dirty and the mother's home was in deplorable condition. Inoperative vehicles were parked throughout the yard, along with trash and wood piles and scattered nails. The porch roof was rotten and caved in. Inside the home, various firearms were located within reach of the children, and there was no furniture in the children's shared bedroom, aside from a mattress that was leaning against the wall and a dresser. The toilet was broken and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as J.R.-1 and J.R.-2, respectively, throughout this memorandum decision.

full of feces, and a propane tank was found next to a heater. The CPS worker later spoke with petitioner, who had moved to Florida about a month and a half prior—during the course of the family court proceedings. Petitioner acknowledged that the home was "trash" and "falling apart" and claimed that the mother was "too lazy to be a mother." The CPS worker also spoke with the children's grandmother, who had placement of the children, and she informed the worker that all the children had lice. Based on these observations, the DHHR alleged that the mother failed to provide a safe and habitable home and neglected the children's hygienic and medical needs, and that petitioner knowingly left his children in deplorable home conditions and with someone whom he considered to be "too lazy" to be a mother.

In August of 2020, the circuit court held an adjudicatory hearing. A CPS worker testified as to her investigation into the allegations. The worker described the children as filthy and hungry at the time of removal, and not properly restrained in car seats in the mother's car. The worker testified that she spoke to petitioner and that he knew of the conditions of the home but left the children in those conditions. The worker stated she had questioned petitioner as to why he left the children in such deplorable conditions, and he replied that "[h]e didn't think it was really that bad."

A second CPS worker testified that the roof of the porch had collapsed and there was loose trash along the length of the porch. That worker further observed guns within reach of the children and only a single mattress leaned against the wall in their bedroom. The worker stated that the toilet was not functioning and filled with feces, and roaches were found inside the refrigerator.

Petitioner testified that he became aware of the home conditions prior to any involvement in family court and that, in fact, he initiated the family court proceedings in an attempt to gain custody of the children due to his belief that the mother was unfit. Petitioner claimed the family court favored the mother and told petitioner that he would "not bash [the mother] in my court." Petitioner further claimed that the family court "pretty much laughed" at his claims that he wanted custody of the children. According to petitioner, he decided to move to Florida approximately two months after the family court awarded the mother custody of the children.

The circuit court adjudicated petitioner as an abusing parent, finding that he "knew or should have known" that his children were living in deplorable, unsafe conditions and that he "knew or should have known that his children's medical needs and hygiene needs were not being met." The circuit court further noted that petitioner moved to Florida "without ensuring the continuing safety and overall well-being of his children." The circuit court later granted petitioner a post-adjudicatory improvement period in October of 2020.

The circuit court held a review hearing in February of 2021. A service provider testified that she requested petitioner provide her with documentation demonstrating that he was maintaining employment, housing, and utilities, but that he failed to do so. At a second review hearing in April of 2021, the DHHR reported that petitioner was doing well in his improvement period.

Prior to the dispositional hearing, the guardian filed a report recommending that petitioner's parental rights be terminated. The guardian noted that petitioner had not visited with the children during the proceedings and "does not appear interested in having visits or regaining

custody of his children." In September of 2021, the circuit court held a dispositional hearing. A CPS worker testified that petitioner was granted an improvement period and was offered virtual services throughout the proceedings. According to the CPS worker, petitioner failed to participate in his parenting and adult life skills classes, missing at least four sessions in the month of July of 2021, despite the fact that they were offered over the phone. The CPS worker opined that due to their young ages, the children were unlikely to recognize petitioner, given the time that had elapsed since they last saw him, and concluded that petitioner's lack of progress indicated that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future.

A service provider testified that petitioner only sporadically complied with parenting and adult life skills classes. According to the provider, petitioner called her around the dates of court hearings but failed to call her at other times. Further, petitioner failed to provide proof of appropriate housing or consistent employment. The service provider testified that she offered petitioner video visits with the children and that he declined, stating he would call the children on his own time. However, when the service provider spoke with the children's grandmother, she indicated that petitioner had called the children only "a couple of times." When the service provider confronted petitioner with this information, he claimed that "he is very busy [and has] a lot of things going on and [it was] hard to get ahold of the kids." The service provider stated that, after that conversation, petitioner spoke to the children twice in July of 2021 for about fifteen minutes each time, and spoke with them on three occasions in August of 2021. On another occasion, while allegedly in West Virginia, petitioner attempted to schedule an in-person visit with the children, but then cancelled only fifteen minutes before the visit was scheduled to start, claiming he was having issues with his vehicle. Overall, the service provider expressed concern with petitioner's inconsistent employment, his refusal or inability to provide proof of housing and utilities, and his lack of consistent contact with the children. Following this testimony, the circuit court continued the hearing.

The circuit court reconvened the hearing later in September of 2021. The service provider testified that petitioner had called the children three times thus far in September and failed to participate in his parenting and adult life skills classes on two occasions in September. Petitioner testified that he called his children every weekend and was capable of financially providing for them. Petitioner testified that he had suitable housing but could not provide a rental agreement because there was no formal written agreement. Petitioner claimed that "there has been a lot said that is actually false" and that the DHHR's witnesses "don't have the correct story." Petitioner also claimed that he had proof of the service provider not "doing her job."

Following testimony, the circuit court found that petitioner failed to follow through with rehabilitative services. The circuit court found that evidence showed that petitioner made little to no progress in his improvement period, had no visits with the children, and only sporadically participated in services. As such, the circuit court concluded that petitioner had not made sufficient efforts to rectify the circumstances that led to the petition's filing and terminated his parental rights upon finding that there was no reasonable likelihood that he could correct the conditions of abuse

and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's September 24, 2021, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and terminating his parental rights. Regarding adjudication, petitioner claims the DHHR "failed to establish a factual basis for any conclusion that [petitioner's] children were abused or neglected" and that there "was no indication of abuse by" petitioner. Petitioner testified at adjudication that he was unaware of the children's deplorable home conditions. Moreover, regarding termination, petitioner states that he participated in services, did not abuse drugs, and did not "physically abuse his children." Lastly, petitioner argues that the circuit court's decision to grant him post-termination visitation supports his claims that there was no abuse of his children as it is "uncommon in real abuse and neglect cases."

We have previously held as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more

---

[2]The mother voluntarily relinquished her parental rights to the children during the proceedings below. The permanency plan for the children is adoption by a relative.

than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (citation omitted).

We conclude that the circuit court was presented with sufficient evidence to find that petitioner abused and/or neglected the children. Said evidence established that petitioner separated from the mother and left the children in her care, relocated to Florida, and failed to check on them or provide for them in any way. In petitioner's absence, the children were subjected to deplorable home conditions and medical and hygienic neglect. Portions of the home's roof were collapsed, roaches were discovered in the refrigerator, the toilet was broken and filled with feces, and the children's shared bedroom lacked adequate furniture—descriptions that coincide with petitioner's statement to the CPS worker that the home was "trash." Moreover, the children were afflicted with lice and were behind on vaccinations. Petitioner provided conflicting stories as to when he learned of the children's deplorable home conditions, and the circuit court found that petitioner "knew or should have known" that his children were living in such conditions and that their medical and hygienic needs were not being met and that he moved to Florida without ensuring the continuing safety and well-being of his children. However, the DHHR presented multiple witnesses who testified that petitioner knew of the conditions of the home prior to the initiation of the family court proceedings and prior to his relocation to Florida. Ultimately, the circuit court weighed this testimony and determined that the testimony presented by the DHHR was more credible than that of petitioner. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Based on the foregoing, we cannot find that the circuit court erred in adjudicating petitioner as an abusing parent, and, thus, petitioner is entitled to no relief in this regard. Further, petitioner's claim that the circuit court's decision to grant him post-termination visitation establishes that he did not abuse or neglect the children is entirely without merit and is unsupported by either the record or relevant legal authority.

We likewise find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner failed to follow through with services designed to reduce or prevent the abuse or neglect of the children. Petitioner only sporadically participated in services, often failing to call his service provider, including four times in July of 2021. Further, petitioner failed to provide documentation of his housing or employment. Petitioner also failed to

visit with the children and, in fact, refused video visits with them, saying he would call the children when he had time. However, the service provider's testimony established that petitioner called the children a mere three times between October of 2020 and July of 2021, spoke to them a total of thirty minutes in the month of July of 2021, and called them on three occasions in August and September of 2021, respectively. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Ultimately, the circuit court found that petitioner made little to no progress in his improvement period and failed to rectify the conditions of abuse and/or neglect that led to the petition's filing. This evidence is sufficient to support the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, it is clear that petitioner failed to remedy the conditions of abuse and neglect and, thus, termination of his parental rights was not error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 24, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment

6